

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2008

# Liu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3449

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Liu v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1028.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1028

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3449

YONG FU LIU,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A95 467 041)
Immigration Judge:  Honorable Charles M. Honeyman

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 12, 2008

Before: FUENTES, ALDISERT and GARTH, <u>Circuit Judges</u>

(Opinion filed: June 12, 2008)

OPINION

PER CURIAM

Yong Fu Liu has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) order of

removal and denial of Liu's requests for asylum, withholding of removal, and protection

under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Liu is a native and citizen of the People's Republic of China and is from Fujian Province. In October 2001, he arrived in the United States as a non-immigrant, but he overstayed his visa. He was placed in removal proceedings and conceded removability. In 2002, Liu applied for asylum, withholding of removal, and CAT relief. The IJ held an evidentiary hearing on Liu's claims on January 18, 2006.

Liu was the only testimonial witness at the hearing. Liu stated that his wife was forced to have an IUD inserted after the birth of their son in 1993. She kept the IUD for about seven years, but she experienced pelvic inflammation from wearing the device. After having it removed, she became pregnant in 2001. Because the pregnancy was not authorized, she went into hiding with relatives and did not appear for her mandatory periodic pregnancy checkups. Officials came to the house several times looking for her. Ultimately, they detained Liu for three days in August 2001, informing him that someone from their village had discovered his wife's hiding place (in a larger village about 100 kilometers away) and reported her to the authorities. During that arrest, Liu stated that the officials struck blows, leaving Liu with residual intermittent shoulder and back pain. Meanwhile, the officials found his wife, forced her to have an abortion, and imposed a 10,000 yuan fine on the couple. Later, intending to compel sterilization on one spouse, the authorities came for Liu because his wife could not be sterilized due to her ill health

2

following the abortion. Liu stated that he went into hiding, obtained a visa, and departed China for the United States. Liu stated that after he left, the authorities came to the house and harassed his wife, looking for Liu and asking where he was. Thus, due to threats and harassment from officials, Liu's wife moved to a new apartment. Liu testified that if he were to return to China, he would be fined, beaten, arrested, and jailed for being illegally smuggled out of China and for revealing the "national secret" regarding forced abortions and forced sterilizations.

In support of his claims, Liu presented documentation, including an abortion certificate from a hospital and a notice of the fine issued by his hometown Villager's Committee. However, the government submitted an investigation report from the Department of State-American Consulate General in Guangzhou, China, indicating that those two documents were fabricated. Liu did not contest the findings of the report. Instead, he testified that the findings in the report constituted evidence of the Chinese government's plan to cloak its human rights abuses toward him. To bolster this rebuttal, Liu submitted a letter from his wife. In her letter, she stated that the officials' threats to her at home resulted from the inquiry into the authenticity of the documents, and that the officials accused her and Liu of revealing national secrets to the United States. Liu testified that the threats to his wife occurred in February 2002. He later testified that his wife was contacted by officials in June 2002, prompting her relocation to an apartment. Yet when confronted with the information that the document verification request was not made until later, in October 2002, Liu stated that he had made a mistake, and the officials

3

came to threaten his wife at their home in June 2003.

The IJ denied relief and ordered Liu's removal from the United States. The IJ found that Liu lacked credibility, relying on a number of inconsistencies within Liu's testimony along with the use of fabricated supporting documentation. On July 24, 2007, in a separate opinion, the BIA dismissed the appeal, finding that the IJ's adverse credibility determination was not clearly erroneous. While the BIA adjudged some of the inconsistencies cited by the IJ to be minor, the BIA agreed that the fabricated documentation to support the claim of forced abortion and imposition of a fine "fatally contradict" Liu's claimed history. The BIA also noted its agreement that there was insufficient evidence to support a CAT claim. This petition for review followed.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). Our review is for substantial evidence, that is, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' but such findings must be based on inconsistencies and improbabilities that 'go to the heart of the asylum claim.'" Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal citation omitted). We must affirm "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citations omitted).[1]

---

[1] Liu applied for asylum before May 11, 2005, and therefore the REAL ID Act's new standard for credibility determinations does not apply to him. Chukwu v. Attorney

Liu challenges the agency's determination that he was not credible. In particular, he assails the reliability of the State Department's investigative report concluding that his supporting documents were fabricated. He argues that the report was based upon the opinions of Chinese government officials who had incentive to be less than forthright, given that an accusation of human rights violations were at issue. Liu contends that the BIA's reliance on the investigative report, which was based on verification by the claimed perpetrators of the human rights abuses, was fundamentally unfair and violated his due process rights.

We are not persuaded by Liu's arguments. First, his assertion that the Chinese verifying authorities were not candid in their assessments is based on his own speculation. Second, he relies on this Court's decision in Ezeagwuna v. Ashcroft, 325 F.3d 396 (3d Cir. 2003), in support of his due process argument, but Ezeagwuna is distinguishable from the case here. Ezeagwuna involved a State Department letter that repeated statements made in an previous declarant's summary of an investigation regarding document authenticity; that earlier summary did not contain an investigative report or any information about the investigation or the investigator. Unlike in Ezeagwuna, the State Department investigative report in Liu's case contains a statement prepared directly by the investigator, setting forth how the inquiries were made and the substance of the replies received from the Chinese authorities, and attaching copies of the replies

General of the United States, 484 F.3d 185, 189 (3d Cir. 2007).

5

themselves. We conclude that the IJ's adverse credibility finding was based on specific reasonable and substantial evidence supported by the record.[2]

Regarding his claim under the CAT, Liu contends that forced sterilization amounts to torture, and that it is more likely than not that he will be subject to this type of punishment for seeking asylum in the United States. However, as noted by the BIA, the record contains evidence that family planning violations by Chinese citizens are typically subject to civil and administrative penalties, such as fines, loss of employment or demotion. Further, the record contains evidence that returnees from the United States face detention until relatives can make travel arrangements to their homes, as well as fines, but there were no confirmed cases of abuse. We conclude that the BIA's conclusion that Liu failed to meet his burden of showing that it is more likely than not that he would be tortured if removed to China, see 8 C.F.R. § 1208.16(c)(2), is supported by substantial evidence.

We will deny the petition for review.

---

[2] Liu disputes the adverse credibility finding regarding his claim of detention and beating in August 2001. Liu testified that he did not seek medical treatment for his injuries because he could not afford it, and the BIA found that testimony lacking in credibility in light of the ample gynecological treatment records for his wife. Liu argues that this finding is based on impermissible speculation regarding the types of medical services readily available to Liu in China. Even if we were to credit Liu's argument, this point does not nullify the substantial evidence supporting the adverse credibility finding.